**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| LINDA BLOXOM, *individually and on behalf of all others similarly situated,* | |
| Plaintiff, | Case No. 2:21-cv-02071-CSB-EIL |
| v. | Honorable Colin S. Bruce |
| HERFF JONES, LLC, | Magistrate Judge Eric I. Long |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
<u>MEMORANDUM OF LAW</u>**

Dated: January 22, 2024

**BURSOR & FISHER, P.A.**
Joseph I. Marchese
jmarchese@bursor.com
Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel:  (646) 837-7150
Fax:  (212) 989-9163

*Class Counsel*

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 2

TERMS OF THE SETTLEMENT..................................................................................... 4

    A.    Class Definition ................................................................................... 4

    B.    Monetary And Prospective Relief........................................................ 4

    C.    Release ................................................................................................. 5

    D.    Notice And Administrative Expenses................................................... 5

    E.    Service Award, Attorneys' Fees, Costs, And Expenses ...................... 5

ARGUMENT ..................................................................................................................... 6

I.    THE SETTLEMENT SHOULD BE FINALLY APPROVED ......................... 6

    A.    Plaintiff And Proposed Class Counsel Have Adequately
           Represented The Class......................................................................... 7

    B.    The Settlement Was Reached As A Result Of Arm's-Length
           Negotiations Between The Parties...................................................... 10

    C.    The Settlement Treats All Settlement Class Members Equally............... 11

    D.    The Relief Secured For The Settlement Class Is Adequate And
           Warrants Approval.............................................................................. 11

           1.    The Cost, Risk, And Delay Of Further Litigation Compared
                   To The Settlement's Benefits Favors Final Approval .................. 12

           2.    The Method Of Distributing Relief To The Settlement
                   Class Members Is Effective And Supports Final Approval........ 13

           3.    The Terms Of The Requested Attorneys' Fees Are
                     Reasonable ................................................................................. 14

    E.    Class Members Overwhelmingly Support The Settlement.................... 15

    F.    The Stage Of The Proceedings And The Amount Of Discovery
           Completed At The Time Of Settlement Support The Settlement............ 16

II.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT
    PURPOSES.................................................................................................... 16

CONCLUSION................................................................................................................ 17

**CASES**

*Burlinski v. Top Golf USA Inc.*,
   1:19-cv-06700 (N.D. Ill. Oct. 13, 2021) ................................................................. 2, 8

*Carroll v. Crème de la Crème, Inc.*,
   2017-CH-01624 (Cir. Ct. Cook Cnty.) ................................................................... 2, 8

*Cothron v. White Castle System, Inc.*,
   216 N.E.3d 918, 2023 IL 128004 (Feb. 17, 2023) ............................................... 9, 10

*Gehrich v. Chase Bank USA, N.A.*,
   316 F.R.D. 215 (N.D. Ill. 2016) ................................................................................ 12

*Goldsmith v. Tech. Sols. Co.*,
   1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ........................................................... 12

*Hale v. State Farm Mut. Auto. Ins. Co.*,
   2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ............................................................... 6

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) .................................................................................. 7

*In re AT & T Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................... 13, 16

*In re Mexico Money Transfer Litig.*,
   164 F.Supp.2d 1002 (N.D. Ill. 2000) ......................................................................... 15

*In re Southwest Airlines Voucher Litig.*,
   2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ............................................................. 12

*In re TikTok, Inc., Consumer Priv. Litig.*,
   617 F. Supp. 3d 904 (N.D. Ill. 2022) ......................................................................... 14

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ....................................................................................... 7

*Marshall v. Lifetime Fitness, Inc.*,
   2017-CH-14262 (Cir. Ct. Cook Cnty.) ......................................................................... 2

*Meegan v. NFI Industries Inc.*,
   1:21-cv-00465 (N.D. Ill. Feb. 17, 2023) ................................................................. 2, 8

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ............................................................................ 11, 12

*Parker v. Time Warner Entm't Co.*,
    331 F.3d 13 (2d Cir. 2003) ...................................................................... 13

*Prelipceanu v. Jumio Corp.*,
    2018-CH-15883 (Cir. Ct. Cook Cty.) ........................................................ 2

*Rogers v. BNSF Railway Co.*,
    2023 WL 4297654 (N.D. Ill. June 30, 2023) ............................................. 9

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................... 13, 15

*Schulte v. Fifth Third Bank*,
    2010 WL 8816289 (N.D. Ill. 2010) .......................................................... 11

*Sekura v. L.A. Tan Enterprises, Inc.*,
    2015-CH-16694 (Cir. Ct. Cook Cty.) .................................................... 2, 14

*Snyder v. Ocwen Loan Servicing, LLC*,
    2019 WL 2103379 (N.D. Ill. Apr. 14, 2019) ......................................... 7, 11

*Svagdis v. Alro Steel Corp.*,
    2017-CH-12566 (Cir. Ct. Cook Cty.) ....................................................... 14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) .................................................................... 7

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) ................................................................. 10

*Zepeda v. Intercontinental Hotels Grp., Inc.*,
    2018-CH-02140 (Cir. Ct. Cook Cty.) ....................................................... 14

**STATUTES**

740 ILCS 14/1 ........................................................................................... 3

**RULES**

Fed. R. Civ. P. 23 ..............................................................................Passim

**OTHER AUTHORITIES**

Newberg on Class Actions .......................................................................... 14

## INTRODUCTION

On October 4, 2023, this Court preliminarily approved the class action settlement between Plaintiff Linda Bloxom ("Plaintiff") and Defendant Herff Jones, LLC ("Herff Jones" or "Defendant") (collectively, the "Parties") and directed that notice be sent to the Settlement Class. *See* ECF No. 16 (the "Preliminary Approval Order"). The settlement administrator has implemented the Court-approved notice plan, and direct notice has reached over **99%** of the certified Settlement Class. The reaction from the class has been overwhelmingly positive. Specifically, of the 430 settlement class members, thus far **zero** have objected or requested to be excluded from the Settlement.[1] The Settlement is an excellent result for the class and the Court should grant final approval.

The strength of the Settlement speaks for itself. After extensive negotiations spanning over many months, including a full-day mediation with The Honorable James F. Holderman (Ret.), formerly the Chief Judge of the Northern District of Illinois and now with JAMS Chicago, the Parties reached a proposed Class Action Settlement Agreement (the "Settlement") that creates a non-reversionary Settlement Fund of $645,000.00 and provides a substantial benefit to the 430 Settlement Class Members. *See* ECF No. 15. Specifically, every Settlement Class Member who does not exclude him or herself from the Settlement will automatically receive a *pro rata* cash payment from the Net Settlement Fund, which Class Counsel estimates will be approximately $950.00 per Settlement Class Member. Additionally, the Settlement also provides meaningful prospective relief, as Defendant acknowledges that it will comply with BIPA for as long as it uses Biometric Data in Illinois and will provide all notices and consent as required by BIPA. If approved, the Settlement will bring certainty, closure, and significant and valuable

---

[1] The deadline for Settlement Class Members to object or request exclusion is January 29, 2024. *See* ECF No. 19.

relief for individuals to what otherwise would likely be contentious and costly litigation regarding Defendant's alleged unlawful collection, use, storage, and disclosure of individuals' biometric identifiers and/or biometric information.

The Court need not evaluate the Settlement in a vacuum, as it follows—and eclipses—numerous other BIPA settlements that came before it. *See, e.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cnty.) (providing only credit monitoring); *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cnty.) ($270.00 per claimant with credit monitoring, reverting funds to defendant); *Sekura v. L.A. Tan Enterprises, Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cty.) (paying claimants approximately $150.00 each); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cty.) (paying claimants approximately $260.00 each); *Meegan v. NFI Industries Inc.*, 1:21-cv-00465 (N.D. Ill. Feb. 17, 2023) (paying claimants approximately $570.00 each); *Burlinski v. Top Golf USA Inc.*, 1:19-cv-06700 (N.D. Ill. Oct. 13, 2021) (paying claimants approximately $650.00 each).

Given the relief proposed by the Settlement, the Court should not hesitate to find that the Settlement is well within the range of approval. Accordingly, Plaintiff respectfully requests that the Court grant final approval to the Settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 21, 2021, Plaintiff filed a putative class action in the Circuit Court of Douglas County against Defendant. *See* Declaration of Philip L. Fraietta ("Fraietta Decl.") ¶ 4. The material allegations of the Complaint were that Defendant collected or captured—without first providing notice, obtaining informed written consent or publishing data retention policies—the finger and/or handprints and associated personally identifying information of hundreds of its employees (and former employees), who were required to "clock in" with their finger and/or

handprints, in violation of the BIPA, 740 ILCS 14/1 *et seq*. *See id.* On April 2, 2021, Herff Jones removed the Action to this Court, where it was assigned Case No. 2:21-cv-02071. Fraietta Decl. ¶ 5 (citing ECF No. 1).

On April 9, 2021, Herff Jones filed a motion to stay pending the outcome of several interlocutory appeals on potentially dispositive issues, including the applicable statutes of limitations and whether employee statutory damages claims are preempted by the exclusive remedy provisions of the Illinois Workers' Compensation Act ("IWCA"). *See id.* ¶ 6. On April 27, 2021, the Court granted Herff Jones' motion to stay and directed the Parties to submit status updates within 14 days of decisions of the several interlocutory appeals discussed above. *Id.* ¶ 7. The Parties submitted the first such status update on February 18, 2022, and on February 28, 2022, the Court issued an order continuing the stay. *Id.* ¶ 8. The Parties submitted a second status update on March 3, 2023, and on March 14, 2023, the Court issued an order continuing the stay again. *Id.*

While the case was stayed, the Parties engaged in settlement discussions, and as part of their obligations under Fed. R. Civ. P. 26, engaged in direct communications, which included the informal exchange of relevant information surrounding the alleged claims that was sufficient to assess the merits of those claims. *See id.* ¶ 9. Those discussions eventually led to an agreement to mediate with Judge Holderman. *Id.*

On June 13, 2023, the Parties participated in a full-day mediation with the Judge Holderman. *See id.* ¶ 10. While the Parties participated in the mediation in good faith, they were unable to reach an agreement to settle the case that day. *See id.* ¶ 11. Over the next two weeks, the Parties continued to engage in settlement negotiations and on June 26, 2023, they reached agreement on all material terms of a class action settlement and executed a term sheet. *See id*. ¶

12.  Thereafter, the Parties drafted and executed the Settlement Agreement and related documents, which are submitted herewith.  *See id.* ¶ 13.

The Court preliminarily approved the Settlement on October 4, 2023.  *See* ECF No. 16. On December 19, 2023, the Parties filed a Joint Motion to Modify Dates in the Preliminary Approval Order asking the Court to extend certain deadlines to account for a small subset of inaccuracies in the class list used by the settlement administrator, Analytics Consulting LLC, and to allow the administrator to send additional Notice to certain Class Members. *See* ECF No. 18. The Court granted the motion two days later, ordering Plaintiff to file for Final Approval by January 22, 2024, and postponing the Final Approval Hearing from January 8, 2024 until February 12, 2024.  *See* ECF No. 19.

## TERMS OF THE SETTLEMENT

The key terms of the Settlement, attached to the Fraietta Declaration as Exhibit 1, are briefly summarized as follows:

### A.  Class Definition

The "Settlement Class" is defined as:

> [A]ll individuals who worked or are currently working for Defendant in the State of Illinois who had their Biometric Identifiers and/or Biometric Information collected, captured, received, or otherwise obtained or disclosed by Defendant or its agent(s) without first signing a written consent form between January 21, 2016 and the date of the Preliminary Approval Order.

Settlement ¶ 1.33.  According to Defendant's records, there are 430 individuals in the Settlement Class.  *See* Fraietta Decl. ¶ 15.

### B.  Monetary And Prospective Relief

Defendant will establish a non-reversionary Settlement Fund of up to $645,000.00 from which each Settlement Class Member will <u>automatically</u> receive a *pro rata* cash payment from

the Net Settlement Fund, estimated to be approximately $950.00 per Settlement Class Member. *See* Settlement ¶¶ 1.35, 2.1(b); Fraietta Decl. ¶¶ 15-16.  The Settlement Fund will also be used to pay notice and administrative expenses, attorneys' fees, costs, and expenses, and an incentive award to the Class Representatives.  *See* Settlement ¶¶ 1.19, 2.1(b).

Additionally, Defendant represents that it has provided and will continue to provide all notices and consents as required by BIPA.  Defendant will continue to comply in good faith with BIPA as long as it uses Biometric Data in Illinois.  *Id.* ¶ 2.2(a).

### C. Release

In exchange for the relief described above, Defendant and each of its related and affiliated entities as well as all "Released Parties," as defined in ¶ 1.29 of the Settlement, will receive a full release of all claims arising out of or related to biometrics, finger scan data, or BIPA.  *See also id.* ¶¶ 1.28-1.30, 3.1-3.2.

### D. Notice And Administrative Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Settlement Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement.  *See id.* ¶¶ 1.19-1.20, 1.31-1.32.

### E. Service Award, Attorneys' Fees, Costs, And Expenses

In recognition of her efforts on behalf of the Settlement Class, Defendant has agreed that Plaintiff may receive, subject to Court approval, a service award of up to $5,000.00 from the Settlement Fund, as appropriate compensation for her time and effort serving as Class Representative and as a party to the Action.  *See id.* ¶ 8.3.  Defendant has also agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to reimburse costs and expenses in this Action, in an amount to be approved by the Court.  *Id.* ¶ 8.1.

Class Counsel has agreed, with no consideration from the Defendant, to petition the Court for attorneys' fees, costs, and expenses of no more than one-third of the Settlement Fund.  *See id.* These awards are subject to this Court's approval, which Plaintiff moved for separately on December 1, 2023 (ECF No. 17).  That motion is unopposed.

## ARGUMENT

## I.     THE SETTLEMENT SHOULD BE FINALLY APPROVED

At the final approval stage, the fairness analysis is guided by Rule 23(e), which states that a district court should approve a class settlement only after a hearing and only on finding that it is fair, reasonable, and adequate considering whether:

(A)     The class representatives and class counsel have adequately represented the class;

(B)     The proposal was negotiated at arm's length;

(C)     The relief provided for the class is adequate, taking into account:

    i.     the costs, risks, and delay of trial and appeal;

    ii.     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.     the terms of any proposed attorneys' fees, including timing of payment; and

    iv.     any agreement required to be identified under Rule 23(e)(3); and

(D)     The proposal treats class members equally relative to each other.

Fed. R. Civ. P. 23(e)(2).  Notably, the Seventh Circuit has identified the following factors in determining whether a settlement is fair, reasonable, and adequate under Rule 23(e): (1) the strength of the plaintiff's case compared to the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings and the amount of discovery completed."  *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *2 (S.D.

Ill. Dec. 16, 2018) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)); *see also* Fed. R. Civ. P. 23, Advisory Committee's Note to 2018 Amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").  Moreover, "[f]ederal courts naturally favor the settlement of class action litigation." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)).

At the preliminary approval stage, this Court held that, "the Settlement Agreement is fair, reasonable, and adequate."  *See* ECF No. 16 ¶ 4.  This Court should grant final approval and find the Settlement is fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e).

### A.  Plaintiff And Proposed Class Counsel Have Adequately Represented The Class

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class.  *See* Fed. R. Civ. P. 23(e)(2)(A).  In considering this factor, courts are to examine whether plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account (i) the nature and amount of discovery completed, whether formally or informally, and (ii) the "actual outcomes" of other, similar cases. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment.  Ultimately, this factor is generally satisfied where the named plaintiff participated in the case diligently, and where class counsel fought hard on behalf of plaintiff and the class throughout the litigation.  *See Snyder v. Ocwen Loan Servicing, LLC et al.,* 2019 WL 2103379, at *4, (N.D. Ill. Apr. 14, 2019).

Here, Plaintiff was extensively involved in the case, including helping her attorneys investigate her claims, preparing and reviewing the Class Action Complaint, and conferring with her counsel throughout the litigation, including the settlement process.  *See* Fraietta Decl. ¶ 33.

Without Plaintiff's involvement the Settlement would not have been possible.

Likewise, Class Counsel's performance in this case demonstrates that their representation has been beyond adequate. <u>First</u>, Class Counsel thoroughly investigated the claims and drafted the Class Action Complaint. Class Counsel also spent months collecting the necessary information and engaging in arm's length negotiations with Defendant, including a full-day mediation with Judge Holderman, ultimately leading to the Settlement. And since the Court granted preliminary approval, Class Counsel has worked with the Settlement Administrator and defense counsel to effectuate the class notice and move for Court approval.

<u>Second</u>, the monetary relief achieved by Class Counsel in this Settlement excels in comparison to other BIPA settlements. As detailed above, many BIPA settlements have failed to provide any monetary recovery to class members, have capped the amount class members can recover, or simply have provided far less of a recovery than this one. *See, e.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cnty.) (providing only credit monitoring); *Meegan v. NFI Industries Inc.*, 1:21-cv-00465 (N.D. Ill. Feb. 17, 2023) (paying claimants approximately $570.00 each); *Burlinski v. Top Golf USA Inc.*, 1:19-cv-06700 (N.D. Ill. Oct. 13, 2021) (paying claimants approximately $630.00). Here, each Settlement Class Member who does not exclude him or herself will <u>automatically</u> receive approximately $950.00, which is an exceptional result. *See* Fraietta Decl. ¶ 16.

Moreover, aside from the monetary relief, the non-monetary benefits also demonstrate Plaintiff's and Class Counsel's superb representation of the class. Specifically, Defendant represents that it has provided and will continue to provide all notices and consents as required by BIPA. Defendant will continue to comply in good faith with BIPA as long as it uses Biometric Data in Illinois. *See* Settlement ¶ 2.2(a).

The result is more impressive when considering the risks presented. Defendant denies the material allegations of the Complaint and intends to pursue several legal and factual defenses, including but not limited to whether Defendant actually collected or possessed biometric information or biometric identifiers. *See* Fraietta Decl. ¶ 24. The unsettled nature of potentially dispositive threshold issues in this case poses a significant risk to Plaintiff's claims and will add to the length and costs of continued litigation. *Id*.

Although at the time of settlement the Illinois Supreme Court had issued its decision in *Cothron v. White Castle System, Inc.*, 216 N.E.3d 918, 2023 IL 128004 (Feb. 17, 2023), wherein it held that "the plain language of section 15(b) and 15(d) shows that a claim accrues under the Act with every scan or transmission of biometric identifiers or biometric information without prior informed consent," that decision was issued over three dissents, and a petition to rehear was pending at the time of settlement, which was the basis for the Court's March 14, 2023 Order continuing the stay. *See* Fraietta Decl. ¶ 25. An adverse decision in *Cothron* would have limited the class and the potential damages available. *See id*.

Additionally, *Cothron* noted that "[i]t also appears that the General Assembly chose to make damages discretionary rather than mandatory under the Act." *Cothron*, 2023 IL 128004, ¶ 42. That presented a risk that even had Plaintiff and the Settlement Class prevailed at trial, they may not have been awarded statutory damages.[2] And indeed, just four days after signing the term sheet, a federal court vacated a jury's statutory damages award in a BIPA class action and ordered a new trial on damages pursuant to *Cothron*'s guidance. *See Rogers v. BNSF Railway Co.*, 2023 WL 4297654, at *8, 13 (N.D. Ill. June 30, 2023). *See* Fraietta Decl. ¶ 26.

Looking beyond trial, Plaintiff is also keenly aware that Defendant could appeal the

---

[2] That risk was heighted in this case as while Defendant denies any liability, it alleges that, at most, it was not in compliance with BIPA for a mere three weeks. Agreement Recitals B.

merits of any adverse decision, and that, considering the statutory damages in play, it would argue—in both the trial and appellate courts—for a reduction of damages based on due process concerns. *See* Fraietta Decl. ¶ 27. Three dissenting Justices on the Illinois Supreme Court were also concerned about defendants facing "crippling financial liability." *Cothron*, 2023 IL 128004, ¶ 61. The dissent reasoned that, "[i]f every scan is a separate, actionable violation, qualifying for an award of liquidated damages," then damages "could easily lead to annihilative liability for businesses" with damages in the "billions." *Id.* ¶¶ 60-61; *see also Wakefield v. ViSalus, Inc.,* 51 F.4th 1109, 1125 (9th Cir. 2022), cert. denied, 143 S. Ct. 1756 (2023) (remanding "so the [district] court may assess in the first instance, guided by these factors and this opinion, whether the aggregate award of $925,220,000.00 in this class action case is so severe and oppressive that it violates ViSalus's due process rights and, if so, by how much the cumulative award should be reduced"). Taking these realities into account and recognizing the risks involved in any litigation, the relief available to each Settlement Class Member in the Settlement represents a truly excellent result of the Settlement Class. *See* Fraietta Decl. ¶ 28.

## B. The Settlement Was Reached As A Result Of Arm's-Length Negotiations Between The Parties

The second Rule 23(e)(2) factor looks to whether the parties negotiated the settlement at arm's-length. *See* Fed. R. Civ. P. 23(e)(2)(B). Here, the Parties engaged in informal discovery, and good-faith negotiations, which were always arm's length, over the course of several months. *See* Fraietta Decl. ¶¶ 9-13. The Parties engaged in additional rounds of arm's-length negotiations facilitated by the Judge Holderman, and, on June 26, 2023, they reached agreement on all material terms of a class action settlement and executed a term sheet. Fraietta Decl. ¶¶ 10-12. The Parties then took several weeks of additional negotiations to reach the detailed terms of the proposed Settlement now before the Court. *See id.* ¶¶ 12-13. The arm's-length nature of

these negotiations is further confirmed by the Settlement itself: it provides significant cash payments to Settlement Class Members, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (approving settlement where there is "no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation").

In sum, here the Settlement reached was the result of the Parties' good faith, arm's-length negotiations lasting several months, and it is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, 2010 WL 8816289, at *4 n.5 (N.D. Ill. 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

## C. The Settlement Treats All Settlement Class Members Equally

The next Rule 23(e)(2) factor considers whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Given that each Settlement Class Member has nearly identical BIPA claims for monetary and injunctive relief, the proposed Settlement treats each of them identically. In terms of monetary relief, each of the 430 Settlement Class Members will <u>automatically</u> receive a *pro rata* cash payment from the Net Settlement Fund, which the Parties currently estimate to be $950.00 per Settlement Class Member. *See* Fraietta Decl. ¶ 16; Settlement ¶¶ 1.35, 2.1(b); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund").

## D. The Relief Secured For The Settlement Class Is Adequate And Warrants Approval

The final and most substantive factor under Rule 23(e)(2) examines whether the relief

provided for the class is adequate. *See* Fed. R. Civ. P. 23(e)(2)(C); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 227 (N.D. Ill. 2016) ("'The most important factor' in determining whether a proposed settlement satisfies Rule 23 is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement. Specifically, the court must "estimate the likely outcome of a trial' to determine the adequacy of a settlement.") (internal citations omitted). In making this determination, Rule 23 instructs courts to consider: (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. *See Ortiz*, 527 U.S. at 855. As explained below, each of these sub-factors demonstrate that the Settlement in this case provides extraordinary relief to the proposed Class and should be approved.

**1.      The Cost, Risk, And Delay Of Further Litigation Compared To The Settlement's Benefits Favors Final Approval**

In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursuing a litigated outcome to the settlement's immediate benefits. *See* Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 amendment. The Settlement here warrants approval because it provides immediate relief to the Settlement Class while avoiding potentially years of complex litigation and appeals. *See Goldsmith v. Tech. Sols. Co.*, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."). And, as aforementioned, the Settlement was reached despite the pendency of appeals on various legal issues that could deprive the Settlement Class of any recovery whatsoever, or significantly reduce any prospective recovery. *See supra* § I.A.; *see also In re Southwest Airlines Voucher*

*Litig.*, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (noting that "legal uncertainties at the time of settlement favor final approval").

Likewise, the Parties also would have been forced to litigate the issue of class certification. *See* Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment (instructing courts to consider the likelihood of certifying the class for litigation in evaluating this sub-factor). Although Plaintiff believes this case is amenable to class certification given Defendant's uniform conduct, that process is by no means risk-free. And even if Plaintiff had succeeded at class certification, summary judgment, and/or trial, Plaintiff expected that Defendant would argue for a reduction in damages based on due process considering the significant potential statutory damages at issue. *See, e.g.*, *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003). Protracted litigation would also consume significant resources, including the time and costs associated with discovery, securing expert testimony on complex biometric and data storage issues, and again, motion practice, trial, and any appeals. It is possible that "this drawn-out, complex, and costly litigation process…would provide [Settlement] Class Members with either no in-court recovery or some recovery many years from now [.]" *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). Because the proposed Settlement offers immediate—and substantial—monetary relief to the Settlement Class and a prompt end to Defendant's alleged misconduct while avoiding the need for extensive and drawn-out litigation, final approval is appropriate. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

2.     **The Method Of Distributing Relief To The Settlement Class Members Is Effective And Supports Final Approval**

The next sub-factor evaluates whether the settlement's proposed method of distributing

relief to the class is effective.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).  An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."  4 NEWBERG ON CLASS ACTIONS § 13:53.  The Settlement easily accomplishes that by <u>automatically</u> providing cash payments—estimated to be $950.00—to every Settlement Class Member who does not opt-out of the Settlement.  *See* Fraietta Decl. ¶ 16; Settlement ¶¶ 1.5, 2.1(b).

### 3. <u>The Terms Of The Requested Attorneys' Fees Are Reasonable</u>

The third and final relevant sub-factor considers the adequacy of the relief provided to the class considering "the terms of the requested attorney's fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  Class Counsel petitioned the Court for an award of reasonable attorneys' fees on December 1, 2023.  *See* ECF No. 17.  The Settlement's contemplated limit on attorneys' fees (*i.e.*, no more than one-third of the Settlement Fund, (*see* Settlement ¶ 8.1)) is reasonable and predicated on the outstanding relief provided to the Settlement Class.  A one-third fee award falls comfortably within the range of typical fee awards in BIPA cases.  *See, e.g., Sekura v. LA Tan Enterprises, Inc.*, 2015-CH-16694 (awarding 40% of fund); *Zepeda v. Intercontinental Hotels Grp., Inc.*, 2018-CH-02140 (awarding 40% of fund); *Svagdis v. Alro Steel Corp.*, No. 2017-CH-12566 (awarding 40% of fund); *In re TikTok, Inc., Consumer Priv. Litig.,* 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) (agreeing with Class Counsel that "a flat percentage fee award of one-third of the net common fund is typical in other data privacy settlements, including many BIPA settlements that courts have approved within this district"); *see also* 5 NEWBERG ON CLASS ACTIONS § 15:83 (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund").  Accordingly, that the Settlement permits the Court to award one-third of the Settlement Fund, or $215,000.00, to Class

Counsel in attorneys' fees, costs, and expenses is more than appropriate. These terms are reasonable and should be finally approved.[3]

For these reasons, Plaintiff and proposed Class Counsel submit that the relief provided by the Settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of possible approval. As such, the Court should grant final approval.

### E. Class Members Overwhelmingly Support The Settlement

The Seventh Circuit also finds final approval to be warranted where, as here, the class overwhelmingly approves of the Settlement. *See Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 586 (N.D. Ill. 2011) (granting final approval to settlement where only a small percentage of affected parties opposed the settlement). Here, the Class Members have overwhelmingly affirmed the Court's judgment at preliminary approval that the Settlement is fair, reasonable, and adequate. Direct notice was delivered to 99.3% of the Class Members and, to date, **zero** have objected or requested to be excluded. *See* Declaration of Caroline P. Barazesh ("Barazesh Decl.") ¶¶ 19-21. Class Members responses to the Notices demonstrate their support for the Settlement, including the benefits to the Class, the incentive award, and proposed attorneys' fees, costs, and expenses. The lack of objections supports a finding that the Settlement is fair, reasonable, and adequate, and should be approved. *See In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that more than "99.9% of class members neither opted out nor filed objections… is strong circumstantial evidence in favor of the settlement"). In endorsing the Settlement, Class Members had easy access to information regarding the Settlement, including important documents such as the Settlement Agreement and

---

[3] Rule 23(e)(3) requires disclosure of agreements made in connection with the proposal. There are no such agreements beyond the Settlement Agreement. *See* Fraietta Decl. ¶ 32. Thus, this factor weighs in favor of final approval.

Fee Petition, and a summary of the settlement terms and the claims being released. Therefore, the Court should grant final approval.

### F. The Stage Of The Proceedings And The Amount Of Discovery Completed At The Time Of Settlement Support The Settlement

The last factor relevant to final approval in the Seventh Circuit concerns the stage of the proceedings and the amount of discovery completed. *See In re AT&T Mobility Wireless Data Services Sales Tax Litigation*, 789 F.Supp.2d 935, 966 (N.D. Ill. 2011) (finding this factor met where parties provided informal discovery that was more than sufficient for effective representation). As noted previously, the parties engaged in informal discovery to better assess the strengths of the claims and defenses presented and to assist in negotiations. Such informal discovery was sufficient to assess the merits of the claims. *See* Fraietta Decl. ¶ 9. Accordingly, the parties exchanged sufficient information to find that the Settlement is fair, reasonable, and adequate and should be approved.

## II. THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

At the preliminary approval stage, the Court certified the following Settlement Class for settlement purposes:

> [A]ll individuals who worked or are currently working for Defendant in the State of Illinois who had their Biometric Identifiers and/or Biometric Information collected, captured, received, or otherwise obtained or disclosed by Defendant or its agent(s) without first signing a written consent form between January 21, 2016 and the date of the Preliminary Approval Order.

Preliminary Approval Order (ECF No. 16) ¶ 9. The Court also appointed Philip L. Fraietta and Joseph I. Marchese of Bursor & Fisher, P.A. as Class Counsel and Plaintiff as Class Representative. *Id.* ¶ 8.[4] Nothing has changed since that time to warrant reconsideration, so the

---

[4] The Court also appointed Christopher R. Reilly of Bursor & Fisher, P.A. as Class Counsel, but Mr. Reilly is no longer with the firm.

Court should finally certify the Settlement Class.

## CONCLUSION

For the reasons described above, Plaintiff respectfully requests that the Court grant her Motion for Final Approval of the Settlement and enter Final Judgment in the form submitted herewith.

Dated: January 22, 2024

Respectfully Submitted,

/s/ *Philip L. Fraietta*
   Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
Joseph I. Marchese
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
Email:  pfraietta@bursor.com
       jmarchese@bursor.com

*Class Counsel*

Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
E-mail: malmstrom@whafh.com

*Local Counsel for Plaintiff and the Settlement Class*

**<u>CERTIFICATION OF WORD COUNT</u>**

I, Philip L. Fraietta, hereby certify that pursuant to Local Rule 7.1(B)(4)(c) this

memorandum of law contains 5,028 words, as counted by Microsoft Word's word count

function, exclusive of captions, tables, and signature blocks.

<u>*/s/ Philip L. Fraietta*</u>
Philip L. Fraietta
